IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUKE KOPULOS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 24 CV 926 ) |
| DR. MARK PISANESCHI and COOK COUNTY GOVERNMENT OF ILLINOIS dba COOK COUNTY HEALTH, | ) Judge John J. Tharp, Jr. ) ) ) ) |
| Defendants. | ) ) |

**ORDER**

For the reasons set forth in the Statement below, Defendants' partial motion to dismiss the amended complaint [26] is denied as to CCH and granted with prejudice as to defendant Pisaneschi. CCH is directed to file an amended answer by August 20, 2025. This case is referred to the assigned Magistrate Judge for all discovery scheduling and supervision, to include any protective order, and for any settlement conference the parties may seek.

**STATEMENT**

Plaintiff Luke Kopulos is a physician who was employed at Cook County Stroger Hospital in 2021 when defendant Cook County Health adopted a mandatory COVID-19 vaccination requirement for employees.[1] Kopulos, an Orthodox Christian, requested a religious exemption from the vaccination policy, and also reported that blood antibody testing established that he had natural immunity to the COVID virus.[2] His exemption request was denied on September 24, 2021. His employment was terminated on July 29, 2022.

Kopulos filed this lawsuit on February 1, 2024, against Cook County Health and Dr. Mark Pisaneschi, who was the chairman of the radiology department in which Kopulos worked. The amended complaint sets forth a single claim: Kopulos was unlawfully terminated for refusing to be vaccinated. The amended complaint includes six "counts," each setting forth a distinct legal

---

[1] For a fuller description of CCH's vaccine mandate policy, *see Lukaszczyk v. Cook Cty.*, 47 F.4th 587, 594-95 (7th Cir. 2022).

[2] It appears that Kopulos alleges that his natural immunity to the COVID virus was a disability, rather than an asset. *See, e.g.*, Compl. ¶ 117 ("Plaintiff on numerous times informed Defendants of his medical condition that he had the antibodies for the Coronavirus, COVID-19." In an affidavit included with his response to the motion to dismiss, Kopulos avers that, due to his natural immunity, "it was medically inappropriate, unnecessary and potentially deleterious to take the sarscov2 vaccine." ECF No. 33-2 ¶ 7.

theory to support the claim for relief as to the termination: Count I asserts that Cook County violated Title VII by discriminating against, and failing to accommodate, Kopulos' religious beliefs; Count II similarly maintains that Cook County violated Title VII by retaliating against Kopulos for exercising his religious beliefs; Counts III and IV invoke the Americans with Disabilities Act ("ADA") and assert (Count III) that Cook County discriminated against, failed to accommodate, and retaliated against (Count IV) Kopulos due to his disability; Count V charges both defendants with violating 42 U.S.C. § 1983 Section 1983 by terminating Kopulos; and Count VI propounds a state law wrongful termination theory against both defendants as well. Cook County answered the complaint as to Count I, and the defendants have jointly moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss the remaining counts for failure to state a claim for relief.

It is important, in considering a motion to dismiss a complaint for failure to state a claim for relief, to distinguish between claims and the legal theories invoked in support of the claims. A "claim is the aggregate of operative facts which give rise to a right enforceable in the courts." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) (quotation omitted). "Counts" are the authorized device for asserting distinct claims—that is, claims "founded on a separate transaction or occurrence," *see* Fed. R. Civ. P. 10(b)—but as here, are often employed to assert different legal theories in support of a claim.[3] A "complaint need not identify a legal theory, and specifying an incorrect theory is not fatal," *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073, 1078 (7th Cir. 1992), but no matter how many legal theories, or "counts," a plaintiff may assert, they constitute a single "claim" to the extent they are premised on the same facts. "[D]ifferent legal theories . . . do not multiply the number of claims for relief." *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1992); *see also id.* ("One set of facts producing one injury creates one claim for relief, no matter how many laws the deeds violate.").

The distinction between claims and legal theories is important because Rule 12(b)(6) permits only the dismissal of claims, not legal theories. "A motion to dismiss under Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015). "[A] complaint cannot be dismissed merely because one of the theories on which it proceeds, and the facts alleged in support of that theory, do not make out a claim for relief." *Am. Nurses' Ass'n v. Illinois*, 783 F.2d 716, 727 (7th Cir. 1986). To the extent that any viable legal theory exists to support a claim, that claim will survive a motion to dismiss. *See Richards v. Mitcheff*, 696 F.3d 635, 638 (7th Cir. 2012); *Croixland Props. Ltd. v. Corcoran*, 174 F.3d 213, 218 (D.C. Cir. 1999) ("[I]f one of the theories can survive a Rule 12(b)(6) motion, the district court cannot dismiss the complaint."); *Churchwick Partners, LLC v. Seal*

---

[3] Though a common practice, setting forth legal theories in separate counts is inconsistent with the federal pleading rules. As Judge Shadur explained in *Bonestroo, Rosene, Anderlik & Associates v. Devery*, "the use of separate counts to set out different theories of recovery is a mistaken manifestation of the state law 'cause of action' approach, rather than the federal concept of 'claim for relief.'" No. 05-cv-02184, 2006 WL 1005284, at *11 (N.D. Ill. Apr. 12, 2006) (citing *NAACP v. Am. Fam. Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir.1991)). "That is not what Rule 10(b)'s last sentence defines as the proper role for any such separation of a pleading into different counts." *Id.*

*Keystone, LLC*, No. 22-cv-02251, 2023 WL 2973801, at *2 (S.D. Ind. Apr. 17, 2023) ("A Rule 12(b)(6) motion cannot be used to dismiss individual legal theories advanced in support of a claim, so long as at least one theory, implicit or explicit, remains[.]").

The time for identifying and testing the viability of legal theories comes after pleading and responding to the complaint, during discovery and the summary judgment process. *ACF 2006 Corp. v. Mark C. Ladendorf, Att'y at L., P.C.*, 826 F.3d 976, 981 (7th Cir. 2016) ("Making legal arguments in support of one's claim comes after the pleadings."); *BBL,* 809 F.3d at 325 ("Summary judgment is different. In contrast to Rule 12(b)(6), which permits only the dismissal of claims, Rule 56(a) explicitly allows for '[p]artial [s]ummary [j]udgment' and require parties to 'identif[y] each claim or defense—*or the part of each claim or defense*—on which summary judgment is sought.'") (alterations in original) (quoting Fed. R. Civ. P. 56(a)); *Alioto v. Town of Lisbon,* 651 F.3d 715, 721 (7th Cir. 2011) ("[W]e have stated repeatedly (and frequently) that a complaint need not plead legal theories, which can be learned during discovery."). At this stage, it is enough to plead a plausible claim, after which "a plaintiff 'receives the benefit of imagination, so long as the hypotheses are consistent with the complaint.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007) (quoting *Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994)). "A full description of the facts that will prove the plaintiff's claim comes later, at the summary-judgment stage or in the pretrial order." *Chapman v. Yellow Cab Coop.*, 875 F.3d 846, 848 (7th Cir. 2017).

"What this all means is that when two theories based on the same facts—and part of a single claim for relief—are presented in a complaint, and a defendant only challenges the sufficiency of the complaint as to one of the theories, the claim cannot be dismissed." *Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 197 F. Supp. 3d 1334, 1341 (N.D. Fla. 2016). "And the challenged *theory* can't be dismissed, either, because dismissal of theories (as opposed to claims) is inappropriate at the motion to dismiss stage." *Id.* So here, where the plaintiff has asserted multiple legal theories in support of a claim, the Court is not free to assess the viability of a subset of the legal theories proffered in support of the single claim asserted in the complaint; a Rule 12(b)(6) motion must demonstrate that there is no legal theory under which the plaintiff's claim may succeed.

Plainly, Cook County Health cannot make that demonstration because it is not challenging all of the potential legal theories asserted in the complaint. Specifically, the County does not challenge the viability of Kopulos' theory that in terminating him, it discriminated against him by failing to accommodate his religious beliefs in violation of Title VII. Absent a challenge to that legal theory, Kopulos' claim against Cook County Health goes forward; Cook County's arguments about the viability of the legal theories the complaint offers in support of that claim must be addressed at summary judgment and/or trial.

By contrast, the motion to dismiss does challenge all of the legal theories offered in support of Kopulos' claim against Pisaneschi. There are two such theories: (i) violation of Section 1983 for discriminating against Kopulos by depriving Kopulos of his First Amendment right to freely exercise his religion; and (ii) wrongful termination under state common law by retaliating against him for the exercise of his religious beliefs. Pisaneschi is correct that a retaliatory discharge claim under Illinois common law can be asserted only against an employer, not an employee, so that theory fails. *See Buckner v. Atlantic Plant Maintenance, Inc.*, 182 Ill. 2d 12, 20-21, 694 N.E.2d

3

565, 569 (Ill. 1998). Pisaneschi also contends that Kopulos' Section 1983 claim fails because it does not sufficiently allege Pisaneschi's personal involvement in Kopulos' termination. The Court does not find that argument to be well founded—the complaint includes abundant allegations of Pisaneschi's involvement and the termination letter Kopulos received identified Pisaneschi as the sender—but the Section 1983 claim nevertheless fails because Pisaneschi is entitled to qualified immunity.

As the defendants argue, under the defense of qualified immunity, "government officials performing discretionary functions are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lanigan v. Vill. Of E. Hazel Crest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997). "[T]he relevant dispositive inquiry…is whether it would be clear to a reasonable [employee] that his conduct was unlawful in the situation he confronted." *Hernandez v. Cook County Sheriff*, 634 F.3d 906, 915 (7th Cir. 2011).

"When a defendant raises a qualified-immunity defense, the plaintiff bears the burden of showing that the defendant's conduct violated a clearly established right. *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019). A right is clearly established if, at the time of the alleged conduct, sufficiently analogous caselaw would make it clear to a reasonable official "that what he is doing violates that right." *Taylor v. Barkes*, 575 U.S. 822, 825 (2015) (citation omitted).

Kopulos' response to Pisaneschi's qualified immunity argument falls well short of demonstrating that Pisaneschi violated Kopulos' clearly established rights. The three-sentence response conclusorily states that Pisaneschi violated Kopulos' First Amendment right to freely exercise his religion, but the Supreme Court has repeatedly instructed that "clearly established law" should not be defined "at a high level of generality." *Ashcroft v. al–Kidd,* 563 U.S. 731, 742 (2011). Rather, "the clearly established law must be 'particularized' to the facts of the case. *Anderson v. Creighton,* 483 U.S. 635, 640 (1987). Otherwise, "[p]laintiffs would be able to convert the rule of qualified immunity ... into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights. *White v. Pauly*, 580 U.S. 73, 79 (2017). Instead, the Court must "look for a controlling case or a robust consensus of cases persuasive authority. There need not be a prior case directly on point, but 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Dillard*, 961 F.3d at 1052). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal citation omitted).

Kopulos fails to identify a statutory or constitutional right which was clearly violated, much less the contours of that right, such that Pisaneschi would have been on notice that his actions, or inaction, with respect to executing and enforcing the CCH vaccination mandate was unlawful. His broad statement that the CCH vaccination requirement violated his free exercise rights under the First Amendment is far too general and abstract to put Pisaneschi on notice that a requirement that hospital employees be vaccinated against a virus creating a pandemic violated the employees' free exercise rights. *See Brandon v. Bd. of Educ. of City of St. Louis*, No. 4:22-CV-00635-SRC, 2025 WL 1360684, at *25 (E.D. Mo. May 8, 2025) (granting qualified immunity and rejecting as overly broad plaintiff's reliance on "a long history of caselaw protecting [f]ree [e]xercise of religion under the First Amendment."). As the *Brandon* court observed, "the articulation of this broad right does

not answer" whether the courts had settled, at the time of the decision, the *specific question* of whether mandating COVID-19 vaccination ran afoul of those rights 'beyond debate.'"

Kopulos has failed to point to any precedent, and this Court has found none (whether in the Seventh Circuit or not), to support that Plaintiff's right to be free from a COVID-19-vaccination mandate were clearly established during the relevant period (*circa* September 2021 to July 2022). That failure dictates the dismissal of the Section 1983 claim against Pisaneschi.

By contrast, the weight of precedent strongly favors the contrary view: if anything was clearly established at the time of the pandemic, it was that mandatory vaccination policies did not offend the Constitution. Long before the COVID-19 pandemic, the Supreme Court held in *Jacobson v. Massachusetts,* 197 U.S. 11, 25 (1905), that a state may require all members of the public to be vaccinated against smallpox, prompting the Seventh Circuit to conclude that "there can't be a constitutional problem with vaccination against SARS-CoV-2." *Klassen v. Trustees of Indiana University*, 7 F.4th 592, 593 (7th Cir. 2021). *Klassen* involved a substantive due process challenge to a mandatory vaccination policy, not a free exercise challenge under the First Amendment, but at the outset of the pandemic, it remained the most analogous precedent available to assess the constitutionality of a vaccination policy.

*Jacobson*, which sustained a criminal conviction for refusing to be vaccinated, teaches that a mandatory vaccination policy does not implicate "a fundamental right ingrained in the American legal tradition." *Klassen,* 7 F.4th at 593. The Second Circuit also recognized as much in *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293–94 (2d Cir.), *opinion clarified,* 17 F.4th 368 (2d Cir. 2021) ("*WTP*"), in which it affirmed that "the Constitution embodies no fundamental right that in and of itself would render vaccine requirements imposed in the public interest, in the face of a public health emergency, unconstitutional." *WTP*, 17 F.4th at 293. As the *WTP* court explained: "Although individuals who object to receiving the vaccines on religious grounds have a hard choice to make, they do have a choice. Vaccination is a condition of employment in the healthcare field; the State is not forcibly vaccinating healthcare workers. . . . [T]he instant challenge to the mandatory vaccination regime is therefore no more compelling than Jacobson's was more than a century ago.

Not surprisingly, then, the courts that have considered whether mandatory vaccination requirements during the pandemic, for public employees such as health care workers violate free exercise rights of those who object to vaccination on religious grounds, have uniformly concluded that such policies do not violate any clearly established law. *Ray v. Washington State Dep't of Health & Hum. Servs.*, No. 2:23-CV-00465-TMC, 2025 WL 1993174, at *7 (W.D. Wash. July 17, 2025) ("district courts have consistently found that officials are entitled to qualified immunity in challenges to public health orders and vaccine mandates passed during the midst of the global COVID-19 pandemic."). In *Phillips v. Rector & Visitors of Univ. of Virginia*, No. 3:22-CV-00075, 2024 WL 4831876, at *2 (W.D. Va. Nov. 19, 2024), for example, the court held that employees of the University of Virginia health system and medical center were shielded by qualified immunity because their conduct—denying religious exemptions to the organization's COVID-19 vaccine policy—did not violate a clearly established Constitutional right. Similarly, in *Jimenez-Mendez v. Oregon Health & Sci. Univ.*, No. 3:23-CV-01190-IM, 2024 WL 326598, at *5 (D. Or. Jan. 29, 2024), the court granted qualified immunity to healthcare workers enforcing policies implementing mandatory vaccination after its review of case law revealed no case law supporting

an argument that such a policy violates the right to free exercise of religion under the First Amendment. And in *Northland Baptist Church of St. Paul, Minnesota v. Walz*, 530 F. Supp. 3d 790, 807 (D. Minn. 2021), the Court granted qualified immunity to a state governor, recognizing that the novelty of a global pandemic, coupled with the lack of relevant precedent, precluded fair warning that the vaccination policies violated free exercise rights.

There are more cases so holding,[4] but these suffice to establish the point: In the absence of precedent indicating that a vaccine mandate violates the federal constitution, Kopulos has no basis to assert that Pisaneschi should have known that he was violating a clearly established constitutional right by enforcing the CCH vaccination policy. It was not clearly established—or established at all—that implementing a mandatory vaccination program that denied Kopulos an exemption based on his religious beliefs violated the free exercise rights afforded by the First Amendment. On this basis, Pisaneschi is entitled to qualified immunity as to Kopulos' claim under Section 1983.

\* \* \*

For the foregoing reasons, the Defendants' partial motion to dismiss the amended complaint is denied as to CCH and granted with prejudice as to Pisaneschi.

Dated: August 6, 2025

John J. Tharp, Jr.
United States District Judge

---

[4] *See, e.g., Schmidt v. City of Pasadena*, No. LA CV21-08769 JAK (JCX), 2024 WL 1640913, at \*11 (C.D. Cal. Mar. 21, 2024) ("Plaintiff does not identify, or offer, any existing caselaw or other precedent in which vaccination mandates or other public health policies related to COVID-19 have been deemed to violate constitutional rights. Indeed, the limited precedent is to the contrary."); *MacDonald v. Oregon Health & Science University*, 689 F. Supp. 3d 906 (D. Or. 2023) (granting qualified immunity to officials of a public university hospital after concluding that a healthcare worker who (as in this case) claimed religious concerns about fetal cells and bodily integrity or sanctity had no clearly established First Amendment right to refuse state-mandated COVID-19 vaccine); *Does 1-11 v. Bd. of Regents of The Univ. of Colorado*, No. 21-CV-02637-RM-KMT, 2022 WL 4547563, at \*5 (D. Colo. Sept. 29, 2022) ("Plaintiffs have identified no authority for the proposition that a vaccination mandate violates the First Amendment if it lacks a religious exception. Courts that have reached the issue since this case was filed have reached the opposite conclusion.").